WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Jesus Rosario Favela-Astorga,<br><br>Defendant. | No. CR-11-00150-002-TUC-DCB (BGM)<br><br>**ORDER** |

The Court having heard oral argument and the pretrial motions being fully briefed the Court rules as follows for the reasons explained below.

The Motion to Preclude video-taped Deposition of Rito Osorio-Arellanes (Doc. 914) is denied as moot; the Motion to Suppress Incriminating Statements (Doc. 915) is denied; the Motion to Dismiss Counts 1, 3, and 4 of the Fifth Superseding Indictment (Doc. 916) is continued as to Counts 3 and 4, pending resolution by Mexico of the United States' request for waiver of the Specialty Rule, and denied as to Counts 1 and 9.

<u>Doc. 914: The Motion to Preclude video-taped Deposition of Rito Osorio-Arellanes</u>

Defendant Favala-Astorga challenges the use of the video-taped deposition of Rito Osorio-Arellanes, a codefendant who was deposed as a material witness in the case. Defendant asserts the deposition was conducted in violation of the Confrontation Clause, 6th and 14th Amendments to the United States Constitution. At the time of the deposition, Defendant Favela-Astorga was in custody in Mexico and unable to participate in the deposition.

The Government responds that it does not intend to introduce the deposition testimony of Rito Osorio-Arellanes at trial. If Rito Osorio-Arellanes testifies at trial, the Government may seek to introduce portions of his deposition testimony for impeachment or other proper use at trial. The Court will decide any such admissibility of the deposition then.

The Court denies the motion as moot without prejudice to it being reurged at trial if Rito Osorio-Arellanes testifies.

Doc. 915: The Motion to Suppress Incriminating Statements

The Court finds that the Defendant voluntarily waived his right to counsel during the interrogation that was conducted in Mexico by United State FBI agents and the Assistant United States Attorney (AUSA). The Government provides a transcript from the recorded interrogation, which reflects that he agreed to and did answer questions after having been advised of his rights under *Miranda*. The Government read him the *Miranda* notice approved for use in foreign countries which provides:

> First of all, [] you have the right to remain silent. Even if you've already spoken to other people, you don't have to talk to us at this time. Anything you say can be used against you in a court of law. You have the right to speak with an attorney, so he can advise you before we ask you any questions. You have the right to have an attorney present during questioning. If you don't have, [] the means to pay for an attorney, you have the right to have 1 assigned to you before questioning, if you so desire. However, our ability to provide you with an attorney at this time may be limited by decisions taken by local authorities or by the availability of an attorney who can practice in the United States of America. If you decide to answer our questions at this time, without an attorney present, you have the right to stop answering at any time.

*See In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 177, 198-201 (9th Cir. 2008) (finding 5th Amendment privilege against self-incrimination applies when U.S. agents question a suspect in a foreign country and approving explanation in Miranda notice that effectuation of that right might be limited by the strictures of criminal procedure of a foreign land; *Miranda* does not require attorneys be produced on call --only that there is a right to an attorney before and during questioning), *see also Cranford v. Rodriguez*, 512 F.2d 860 (10th Cir. 1975) (approving notice offering opportunity to consult the American Consulate).

While the recording was inaudible in parts, it is clear that the Defendant was told that he could remain silent and had a right to counsel before and during questioning, and if he chose to answer questions while in Mexico, the Government's ability to provide an attorney would be limited by local considerations, including its ability to provide an attorney who could practice in the United States.

It is undisputed that he did not verbally invoke his right to counsel, but he explains his silence was because he believed the three Mexican attorneys were there to represent him. He argues that the Mexican attorneys did not provide effective representation because they did not advise him to remain silent. He argues that the United States set him up by requesting the presence of the Mexican attorneys at the interrogation. The relevant portion of the recording is inaudible in part but reflects that the Mexican attorneys did tell the Defendant that they were there to protect his rights. What they meant by that is less clear. The Court has read the transcript. *See* (Transcript of Record statements: "We're here to provide international legal assistance"; "They would like to interview you," (TR (Doc. 915-1) at 4 lns 9-19); inaudible followed by "because you gave us your consent for them to take samples which they need," *id.* at 5 lns 4-7; and everything he agreed to had to be done voluntarily with his consent, *id*. lns 16-21). The transcript reflects the Mexican attorneys were there to ensure that any cooperation by the Defendant with the United States' agents was voluntary. The Court finds no persuasive evidence that the Defendant misunderstood the role being played by the Mexican attorneys, but even if he did—the Court finds no evidence that the United States' agents played any role or had any responsibility for any such misapprehension.

The Court finds that the Defendant was given notice pursuant to *Miranda* that he had a right to have counsel appointed to advise him before and during questioning, but this right might not be effectuated immediately if he decided to answer their questions right then, and if he answered questions his answers could be used against him in a court of law. Without invoking his right to counsel, the Defendant verbally agreed and did answer questions after being properly advised pursuant to a proper *Miranda* notice of his rights

under the 5th and 6th Amendments. The Court finds that he was given sufficient notice to know his rights and the results of waiving those right to make a free and intelligent decision.

An individual can waive *Miranda* rights so long as he does so "voluntarily, knowingly, and intelligently." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The inquiry into whether an individual waived his rights has two distinct dimensions. *Edwards v. Arizona*, 451 U.S.477, 482 (1981). First, the relinquishment of the right "must have been voluntary in the sense that it was the product of free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). Second, it must also be voluntary in the sense that it was an intelligent choice: "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

A waiver of rights does not immediately render a statement or confession voluntary. Courts must determine if the "totality of the circumstances surrounding the interrogation" demonstrate that the individual's statement was made as the product of an uncoerced choice and with the "requisite level of comprehension," in order to conclude a defendant's statements were voluntary. *Id*. The Court considers various circumstances, including: (1) whether there was police coercion; (2) the length of the interrogation, its location, and its continuity; (3) whether police advised the suspect of his rights; and (4) whether there were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir.2003)).  Courts should also consider defendant's age and education, the nature of the questioning, and the use or threat of physical punishment." *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir.2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)).

There is no assertion by the Defendant that any of these factors were at issue here to render the waiver of his right to counsel, made after being given a proper *Miranda* notice, ineffective to protect both his 5th and 6th Amendment rights. *See Patterson v. Illinois,* 487 U.S. 285, 296, 297 n. (1988) (with rare exceptions, "[a]s a general matter ... an accused

who is admonished with the warnings prescribed ... in *Miranda*, ... has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights.")

The burden is on the Government to prove voluntariness by a preponderance of the evidence. *United States v. Haswood,* 350 F.3d 1024, 1027 (9th Cir. 2003) (citing *United States v. Leon Guerrero*, 847 F.2d 1363, 1365 (9th Cir. 1988)). A defendant's waiver of his *Miranda* rights is a significant factor in a totality of the circumstances analysis, and while it does not render moot the voluntariness inquiry, *id.*, (citing *Dickerson v. United States*, 530 U.S. 428, 433–34 2326 (2000), it presses the Defendant to articulate some factual allegation sufficient to challenge the propriety of the *Miranda* warning, *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990). The Defendant failed to articulate factual allegations sufficient to challenge the propriety of the *Miranda* warning. The presence of three Mexican attorneys at the interrogation, who arguably described the purpose of their presence ambiguously, is not sufficient to show that he did not waive his right to have an attorney appointed who was qualified to practice in the United States. The Court finds his waiver was a free and deliberate choice rather than procured by intimidation, coercion, or deception.

The Court finds that the Defendant voluntarily waived his right to counsel and answered the questions. There was no violation of his 5th and 6th Amendment rights. The Court denies the Motion to Suppress.

Motion to Dismiss Counts 1, 3, 4 and 9 of the Fifth Superseding Indictment (Doc. 916)

The Court denies dismissal of Count 9, Use and Carrying a Firearm During a Crime of Violence. The specified underlying conduct must be a crime of violence. Section 924(c)(3) defines a crime of violence and contains an elements clause, §924(c)(3)(A),[1] and a residual clause, § 924(c)(3)(B)[2].

---

[1] Is an offense that is a felony and- "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

[2] Is an offense that is a felony and- "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. or an enhanced sentence for anyone who uses or carries a firearm

Defendant argues that Count 2, Second Degree Murder, 18 U.S.C. §1111 and 1114, has been rejected as a crime of violence under the elements clause of §924(c)(3)(A) because it can be committed recklessly and to be considered a crime of violence, purposeful and intentional conduct is required. *United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019). The Defendant also challenges Count 9 based upon cases finding the residual clause, § 924(c)(3)(B), unconstitutional. *See Sessions v Dimaya*, 138 S. Ct. 1204 (2018), (finding definition of crime of violence found in 18 U.S.C. §16(b), the residual clause in the federal criminal code's definition of "crime of violence," as incorporated into the Immigration and Nationality Act's (INA) definition of "aggravated felony" (8 U.S.C.A. § 1101(a)(43)(F)), impermissibly vague in violation of the Due Process Clause of the 5th Amendment); *United States v. Davis*, 139 S.Ct. 2319 (2019) (same findings for residual clause in 18 U.S.C. §924(c)(3)(B), and finding that conspiracy to commit Hobbs Act robbery is not a crime of violence).

The Court agrees with the Government that this case law does not warrant dismissal of Count 9 because it bases Count 9 on a crime of violence as defined under § 924(c)(3)(A), the "elements clause," which remains in full force. The Court understood Defendant at oral argument to withdraw the "elements clause" objection to Count 2, Second Degree Murder, because the Government charged it as a specific intent crime. Under it, 924(c)(3)(A), the Ninth Circuit has recognized attempted Hobbs Act robbery as a crime of violence. *United States v. Dominguez*, 954 F.3d 1251, 1255 (9th Cir. 2020). Even if Count 4 is dismissed, Counts 5 through 8, 18 U.S.C. § 111: the assault charges on a federal officer, are underlying conduct for Count 9 that qualify as crimes of violence for § 924(c)(3)(A). *United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2007). The Court denies the Motion to Dismiss Count 9.

Defendant's challenge to Count 1, Frist Degree Murder (Felony Murder), 18 U.S.C. §§ 1111 and 1114, is based on the dismissal of Counts 3 and 4. The Court grants the Government's request to continue resolution of the Motion to Dismiss Counts 3 and 4,

---

in the furtherance of a drug trafficking crime or a crime of violence."

pending a decision from Mexico to grant a waiver of the Rule of Specialty. The Court, however, finds that even if Counts 3 and 4 are dismissed, Count 1 remains. The Court reviewed the Extradition Decision and finds that Mexico expressly and without reservation agreed to extradite the Defendant on Count 1. *See* (Motion to Dismiss, Extradition Decision (Doc. 916-1) at 10-14). To the extent any exception to extradition for Count 1 was discussed in the Extradition Decision, the discussion referenced the limitation that extradition was not being granted for the charges in the Hobbs Act Counts 3 and 4 because they involved marijuana which the Mexican Extradition Decision described as "not a good that can be owned for legal commerce."

This does not require dismissal of Count 1 because the Government is correct that it does not need to charge the robbery or attempted robbery under the Hobbs Act or otherwise. Under 18 U.S.C. § 1111, "every murder . . . committed in the <u>perpetration of</u>, or <u>attempt to perpetrate</u>, <u>any . . . robbery</u> . . . is murder in the first degree." (emphasis added.) The Government does not need to establish attempted robbery under the Hobbs Act, which includes the commerce clause provisions that offended Mexico. The Government only needs to prove the murder occurred during an attempted robbery.

"Generic robbery" is defined as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the person." *United States v. Becerril-Lopez*, 541 F.3d 881, 891 (9th Cir. 2008) (relying on *United States v. Santiesteban–Hernandez*, 469 F.3d 376, 380 (5th Cir.2006) (superseded by regulation as to extortion as stated in *United States v. Bankston*, 9th Cir., August 23, 2018). We define generic "attempt" as requiring "[1] an intent to commit" the underlying offense, along with "[2] an overt act constituting a substantial step towards the commission of the offense." *United States v. Gonzalez-Monterroso*, 745 F.3d 1237, 1243 (9th Cir. 2014) (quoting *Hernandez–Cruz v. Holder*, 651 F.3d 1094, 1100 (9th Cir.2011)), *see also United States v. Rivera–Ramos*, 578 F.3d 1111, 1113–14 (9th Cir.2009).

These generic terms are in keeping with those elements of Hobbs Act attempted robbery. There, "the term 'robbery' means the unlawful taking or obtaining of personal

property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." 18 U.S.C.A. § 1951.[3] The statute does not define attempt. In short, Count 1 requires the Government to present evidence to establish robbery or attempted robbery. There is no need to establish any degree of obstruction, delay, or effect on commerce or the movement of a commodity in commerce that is required to prove Count 4, Hobbs Act attempted robbery, which Mexico found offensive to its laws and excepted from its extradition decision.

The Court denies dismissal of Count 1.

**Accordingly,**

**IT IS ORDERED** that the Motion to Preclude Video-taped Deposition of Rito Osorio-Arellanes (Doc. 914) is DENIED AS MOOT.

**IT IS FURTHER ORDERED** that the Motion to Suppress Incriminating Statements (Doc. 915) is DENIED.

**IT IS FURTHER ORDERED** that the Motion to Dismiss (Doc. 916) is DENIED IN PART AND CONTINUED IN PART, as follows:

    a. The Motion to Dismiss as to Counts 3, and 4 is continued, pending a determination from Mexico regarding waiver of the Specialty Rule.

    b. The Motion to Dismiss s to Counts 1 and 9 is DENIED.

Dated this 23rd day of September, 2021.



Honorable David C. Bury
United States District Judge

---

[3] "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association" 18 U.S.C. § 2113 (Bank Robbery)