☒ FILED  ☐ LODGED

**Apr 14 2022**

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

1  RANDY S. GROSSMAN
   United States Attorney
2  DAVID D. LESHNER
3  Special Attorney
   California State Bar No. 207815
4  PETER KO
5  Special Attorney
   California State Bar No. 191994
6  Federal Office Building
7  880 Front Street, Room 6293
   San Diego, California 92101-8893
8  Telephone: (619) 557-5610
9  David.Leshner@usdoj.gov

10 Attorneys for Plaintiff
11 United States of America

12              UNITED STATES DISTRICT COURT

13                   DISTRICT OF ARIZONA

14

15 United States of America,          Case No.:  11-CR-0150-TUC-DCB

16              Plaintiff,            **PLEA AGREEMENT**

17       v.

18
   Jesus Rosario Favela-Astorga (2),
19
                Defendant.
20

21

22       The United States of America and the defendant, Jesus Rosario Favela-Astorga,

23 agree to the following disposition of this matter:

24                              <u>PLEA</u>

25       The defendant agrees to plead guilty to Count Two of the Fifth Superseding

26 Indictment, charging a violation of Title 18, United States Code, Sections 1111 and

27 1114, second degree murder, a felony.

28 ///

The United States agrees to (1) move to dismiss the remaining charges without prejudice when the defendant is sentenced, and (2) not prosecute the defendant thereafter on such dismissed charges unless the defendant breaches the plea agreement or the guilty plea entered pursuant to this plea agreement is set aside for any reason. The defendant expressly waives all constitutional and statutory defenses to the reinstatement of any charges dismissed pursuant to this agreement.

## STIPULATIONS, TERMS AND AGREEMENTS

### Maximum Penalties

A violation of 18 U.S.C. § 1111 is punishable by imprisonment for up to life, a maximum fine of $250,000.00, a term of supervised release of up to five years and a special assessment of $100. The special assessment is due and payable at the time the defendant enters the plea of guilty, and must be paid by the time of sentencing unless the defendant is indigent.  If the defendant is indigent, the special assessment will be collected according to Title 18, United States Code, Chapters 227 and 229.

### Agreements Regarding Sentence

The parties agree that the defendant will recommend a sentence of not less than 420 months' imprisonment and that the United States will recommend a sentence of not more than 600 months' imprisonment.

The defendant understands that the court is neither a party to nor bound by this agreement and specifically the Court has complete discretion to impose a sentence of up to life imprisonment for the crime to which the defendant has pled guilty.  The parties understand and agree that the Court's failure to follow either party's sentencing recommendation shall not constitute a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that this plea agreement contains all the terms, conditions and stipulations regarding sentencing.

/ / /

/ / /

## Breach of the Agreement

If the defendant fails to comply with any obligation or promise pursuant to this agreement, the United States:

a.      May, in its sole discretion, declare any provision of this agreement null and void, and the defendant understands that the defendant shall not be permitted to withdraw the plea of guilty made in connection with this agreement;

b.      May prosecute the defendant for any offense known to the United States for which the defendant is responsible, and the defendant waives any statute of limitations, Speedy Trial Act, and constitutional restrictions for bringing charges after the execution of this agreement;

c.      May argue for a maximum statutory sentence for the offense to which the defendant has pled guilty.

## Waiver of Defenses and Appeal Rights

The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant. The defendant further waives: (1) any right to appeal the Court's entry of judgment against the defendant; (2) any right to appeal the imposition of sentence upon the defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack the defendant's conviction and sentence under Title 28, United States Code, Section 2255, or any other collateral attack. The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction or sentence in this case. If the defendant files a notice of appeal or seeks to collaterally attack his conviction or sentence, notwithstanding this agreement, the defendant agrees that this case shall, upon motion of the government, be remanded to the district court to determine whether defendant is in breach of this agreement and, if so, to permit the government to withdraw from the plea agreement.

1 **Reinstatement of Removal, Deportation, or Exclusion**

2     The defendant admits that the defendant was the subject of a previous order of
3 removal, deportation or exclusion.  The defendant agrees to the reinstatement of that
4 previous order of removal, deportation or exclusion.  The defendant admits that he does
5 not have a fear of returning to the country designated in the previous order.  If this plea
6 agreement is accepted by the court, the defendant agrees not to contest, either directly
7 or by collateral attack, the reinstatement of the prior order of removal, deportation or
8 exclusion.

9 **Reinstitution of Prosecution**

10     Nothing in this agreement shall be construed to protect the defendant in any way
11 from prosecution for perjury, false declaration or false statement, or any other offense
12 committed by the defendant after the date of this agreement.   In addition, if the
13 defendant commits any criminal offense between the date of this agreement and the date
14 of sentencing, the United States will have the right to withdraw from this agreement.
15 Any information, statements, documents and evidence which the defendant provides to
16 the United States pursuant to this agreement may be used against the defendant in all
17 such proceedings.

18     If the defendant's guilty plea is rejected, withdrawn, vacated, or reversed by any
19 court in a later proceeding, the United States will be free to prosecute the defendant for
20 all charges as to which it has knowledge, and any charges that have been dismissed or
21 not alleged because of this plea agreement will be automatically reinstated.  In such
22 event, the defendant waives any objections, motions or defenses based upon the Speedy
23 Trial Act or the Sixth Amendment to the Constitution as to the delay occasioned by the
24 later proceedings.

25 **Disclosure of Information to U.S. Probation Office**

26     The defendant understands the United States' obligation to provide all
27 information in its file regarding the defendant to the United States Probation Office.
28 The defendant fully understands and agrees to cooperate fully and truthfully with the

4

1   United States Probation Office in providing all information requested by the probation
2   officer.

### Effect on Other Proceedings

4       This agreement does not preclude the United States from instituting any civil or
5   administrative proceedings as may be appropriate now or in the future.

6       The defendant understands that if the defendant violates any of the conditions of
7   the defendant's supervised release, the supervised release may be revoked.  Upon such
8   revocation, notwithstanding any other provision of this agreement, the defendant may
9   be required to serve a term of imprisonment or the defendant's sentence may otherwise
10  be altered.

### WAIVER OF DEFENDANT'S RIGHTS

12      I have read each of the provisions of the entire plea agreement with the assistance
13  of counsel and understand its provisions.   I have discussed the case and my
14  constitutional and other rights with my attorney. I understand that by entering my plea
15  of guilty I will be giving up my rights to plead not guilty; to trial by jury; to confront,
16  cross-examine, and compel the attendance of witnesses; to present evidence in my
17  defense; to remain silent and refuse to be a witness against myself by asserting my
18  privilege against self-incrimination; all with the assistance of counsel, to be presumed
19  innocent until proven guilty beyond a reasonable doubt, and to appeal or collaterally
20  attack my conviction and sentence.

21      I agree to enter my guilty plea as indicated above on the terms and conditions set
22  forth in this agreement.

23      I have been advised by my attorney of the nature of the charge to which I am
24  entering my guilty plea.  I have further been advised by my attorney of the nature and
25  range of the possible sentence.

26      My guilty plea is not the result of force, threats, assurance or promises other than
27  the promises contained in this agreement. I agree to the provisions of this agreement as
28  a voluntary act on my part, rather than at the direction of or because of the

1  recommendation of any other person, and I agree to be bound according to its

2  provisions.

3      I agree that this written plea agreement contains all the terms and conditions of

4  my plea and that promises made by anyone (including my attorney) that are not

5  contained within this written plea agreement are without force and effect and are null

6  and void.

7      I am satisfied that my defense attorney has represented me in a competent

8  manner.

9      I am not now on or under the influence of any drug, medication, liquor, or other

10  intoxicant or depressant, which would impair my ability to fully understand the terms

11  and conditions of this plea agreement.

12                          <u>**ELEMENTS OF THE OFFENSE**</u>

13      1.     United States Border Patrol Agent Brian Terry was killed unlawfully and

14  with malice aforethought.

15      2.     Agent Terry was killed while engaged in the performance of his official

16  duties.

17      3.     Agent Terry was killed by a member of a conspiracy to interfere with

18  commerce by robbery;

19      4.     Agent Terry was killed in furtherance of the conspiracy to interfere with

20  commerce by robbery.

21      5.     The defendant was a member of the same conspiracy to interfere with

22  commerce by robbery at the time Agent Terry was killed.

23      6.     The killing of Agent Terry fell within the scope of the unlawful agreement

24  and could reasonably have been foreseen to be a necessary or natural consequence of

25  the conspiracy to interfere with commerce by robbery.

26  ///

27  ///

28  ///

6

## **FACTUAL BASIS AND SENTENCING FACTORS**

I agree that the following facts accurately describe my conduct in connection with the offense to which I am pleading guilty and that if this matter were to proceed to trial the government could prove, by competent and admissible evidence, the following facts beyond a reasonable doubt:

1. In 2010, Jesus Rosario Favela-Astorga resided in Sinaloa, Mexico. Jesus Rosario Favela-Astorga entered into an agreement with others to steal loads of marijuana from individuals who were smuggling marijuana from Mexico into the United States. In order to accomplish this, members of the conspiracy would (1) enter the United States from Mexico on foot, (2) retrieve caches of supplies and firearms hidden in the United States, (3) use the firearms to intimidate marijuana smugglers into giving up their loads of marijuana and (4) transport the stolen marijuana to another location inside the United States and give it to other co-conspirators who would take it elsewhere for distribution. Rosario Rafael Burboa-Alvarez coordinated the robberies from Mexico.

2. Around December 7, 2010, Jesus Rosario Favela-Astorga traveled with Heraclio Osorio-Arellanes, Manuel Osorio-Arellanes, Rito Osorio-Arellanes, Lionel Sanchez-Meza and Ivan Soto-Barraza (the "conspirators") from Sinaloa, Mexico, to Nogales, Sonora, Mexico. Around December 10, 2010, Jesus Rosario Favela-Astorga and the other five conspirators entered the United States without obtaining the consent of United States authorities. The purpose of that illegal entry into the United States was to rob marijuana loads from smugglers and to provide the stolen marijuana to other individuals in the United States.

3. Around December 12, 2010, Jesus Rosario Favela-Astorga and the other five conspirators were hiking to retrieve the hidden firearms. They encountered Border Patrol agents. The agents arrested Rito Osorio-Arellanes. Jesus Rosario Favela-Astorga and the other conspirators dropped their backpacks, ran from the agents and avoided capture.

7

4.     After the Border Patrol agents left with Rito Osorio-Arellanes, the remaining five conspirators – Jesus Rosario Favela-Astorga, Heraclio Osorio-Arellanes, Manuel Osorio-Arellanes, Lionel Sanchez-Meza and Ivan Soto-Barraza – returned and retrieved their backpacks. They then retrieved firearms and food supplies that had been hidden in the area by others. Each of the five conspirators carried a firearm. Jesus Rosario Favela-Astorga carried a loaded AK-47-type assault rifle. After robbing the drug smugglers, the conspirators planned to hide the firearms in the United States before they left the area.

5.     Once Heraclio Osorio-Arellanes, Jesus Rosario Favela-Astorga, Manuel Osorio-Arellanes, Lionel Sanchez-Meza and Ivan Soto-Barraza secured firearms and food supplies, they began looking for drug smugglers to rob. On December 14, 2010, while they were looking for drug smugglers to rob, the conspirators encountered Border Patrol agents. Members of the conspirators' group exchanged fire with the agents. One of the shots fired by a conspirator killed Border Patrol Agent Brian Terry. Agents shot Manuel Osorio-Arellanes, and he was captured at the scene. The remaining four conspirators – Jesus Rosario Favela-Astorga, Heraclio Osorio-Arellanes, Lionel Portillo-Meza and Ivan Soto-Barraza – fled to Mexico.

6.     Agent Terry was killed in the District of Arizona while he was engaged in the performance of his official duties. His killing fell within the scope of the conspiracy to interfere with commerce by robbery and could reasonably have been foreseen to be a necessary or natural consequence of the conspiracy.

April 8, 2022

_Jesus Rosario Favela Astorga_
Date

JESUS ROSARIO FAVELA-ASTORGA
Defendant

8

## DEFENSE ATTORNEY'S APPROVAL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Rule 11, Fed. R. Crim. P., the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea, including the defendant's waiver of the right to appeal. No assurances, promises, or representations have been given to me or to the defendant by the government or by any of its representatives which are not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure the guilty plea is entered in accordance with all the requirements of Rule 11, Fed. R. Crim. P.

I translated or caused to be translated this agreement from English into Spanish to the defendant on April 8, 2022.

April 8, 2022
Date

MICHAEL CARRILLO
Attorney for Jesus Rosario Favela-Astorga

## GOVERNMENT'S APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

RANDY S. GROSSMAN
United States Attorney
Southern District of California

4/11/22
Date

DAVID D. LESHNER
Special Attorney

9