RANDY S. GROSSMAN
United States Attorney
PETER KO
Special Attorney
California State Bar No. 191994
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-7359
Email: Peter.Ko2@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Jesus Rosario Favela-Astorga (2),<br><br>　　　　Defendant. | Case No.:   11-cr-0150-TUC-DCB-BGM<br><br>**UNITED STATES' SENTENCING MEMORANDUM** |

　　　Favela and others snuck across the border and patrolled the desert with assault rifles to rob marijuana smugglers. Border Patrol agents tried to arrest them. One or more of the robbery crew shot back, killing Agent Brian Terry. For his part in Terry's murder, Favela should be sentenced to 50 years of imprisonment.

　　　Section 3553(a) requires "a sentence sufficient, but not greater than necessary," to reflect the seriousness of the crime, promote respect for the law, punish justly, deter crime, protect the public, and give Favela needed training or treatment. 18 U.S.C. § 3553(a)(2). The statute enumerates factors that, in addition to the guidelines, must be considered in deciding the appropriate sentence: the crime, Favela's background, the purposes of sentencing, the sentences available, avoiding unwarranted disparities, and any need for victim restitution. 18 U.S.C. § 3553(a).

1.     The initial step is an accurate calculation of the guideline range without departures. *Kimbrough v. United States*, 128 S. Ct. 558, 574 (2007); see *United States v. Mohamed*, 459 F.3d 979, 986-87 (9th Cir. 2006). Favela has pleaded guilty to second-degree murder as charged in count 2. The base offense level for that crime is 38. USSG § 2A1.2.

Six levels should be added under USSG § 3A1.2. The adjustment applies if the defendant "or a person for whose conduct the defendant is otherwise accountable" assaults a law enforcement officer during "the offense or immediate flight therefrom" in a way creating a substantial risk of serious bodily injury, "knowing or having reasonable cause to believe" the person is an officer. USSG § 3A1.2(c)(1). One or more of the robbery crew shot at the agents which is obviously an assault with substantial risk of serious injury. Terry died. The shots came two days after the group fled from Border Patrol agents in the same area and—according to previous testimony in this case—right after the agents in the wash broke the silence by yelling "police" in Spanish. See, e.g., PSR, para. 12; ECF 221-1, 221-2, 221-3. Whoever fired knew they were shooting at law enforcement. At worst they had reasonable cause to think that. Who from the crew fired is uncertain but immaterial. Only the robbery crew was in the wash. Foreseeable acts by his conspirators to rob smugglers or avoid capture are, legally, Favela's acts, see USSG § 1B1.3(a)(1)(B), the reason he is guilty of murder in the first place. See *Pinkerton v. United States*, 328 U.S. 640 (1946). At any rate everyone in the group was armed for bear and hunting a confrontation. A shootout to escape was predictable, not just foreseeable. See, for example, *United States v. Gamez*, 301 F.3d 1138, 1146-47 (9th Cir. 2002), which thought it foreseeable to an unarmed drug smuggler that his fellow armed smuggler "would kill a Border Patrol officer who approached the group."

Two levels should be deducted because Favela pleaded guilty and admitted what happened in his plea agreement. USSG § 3E1.1(a). We do not move for a third level. See USSG § 3E1.1(b). Favela waited over two years until two weeks before trial to plead guilty. The prosecution expended many hours for months preparing for trial. (Not that it makes a difference; the range we calculate is the same with or without the additional level.) The total offense level should be 42 (38+6-2). Favela has three criminal history points, placing him in

category II. The recommended sentence for 42/II is 360 months to life in prison. USSG, Chap. 5, Part A.

2. Fifty years is within that range and called for by the § 3553(a) considerations. Familiarity and passage of time cannot obscure the crime's severity. Terry's murder in the line of duty by itself places this among the most aggravated offenses deserving high penalties. The context pushes it to the top. Favela's crew breached the nation's border to commit acts of violence and other crimes then assaulted and killed U.S. agents to get away. Afterwards he evaded capture and remained free for seven years while Terry's family, friends, and colleagues lived with uncertainty about his killers' fates. See PSR, para. 28.

Favela's early background is unremarkable. See PSR, para. 53-65. Nothing he has disclosed makes his actions understandable or less serious than appears. No one needs it, but he had ample warning to give up this life. In 2008 he got three years in prison for possessing marijuana for sale. The circumstances, however, suggested he was fully immersed. Favela had a 25-pound bale of marijuana in his trunk; the house he drove to had over $25,000 in cash; and the house he just left had more 25-pound marijuana bales, 13 assault rifles and handguns, and little furniture. See PSR, para. 45. He responded 10 months after his release from prison and deportation to Mexico by slipping back into the country with the crew that killed Agent Terry. Probably the second time after his removal that he came back illegally: he said in his 2017 interview that he also had traveled to the U.S. a few months before the fatal December 2010 trip which echoes accounts by others in the crew. See PSR, para. 17. Favela said in the interview that both trips were just to transport marijuana, but his guilty plea conceded that to be false, at least for the December trip.

The sentence must not be unjustifiably out of line with federal sentences for similar crimes by similar offenders. See 18 U.S.C. § 3553(a)(6); *United States v. Ringgold*, 571 F.3d 948, 951 (9th Cir. 2009). The Sentencing Commission reports the average federal murder sentence over the past six years is 262 months in prison, U.S. Sent. Comm'n, Interactive Data Analyzer, available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited Aug. 22, 2022), but that understates the true average, maybe significantly, as sentences of

470 months or more, including life in prison and presumably death, all count as 470 months in computing the "average." *Id.* (And this was not an average murder.)

More particularly, even a cursory review of sentences imposed for killing a federal law enforcement officer shows nearly all offenders get much more than 262 months. Examples are *United States v. Zapata Espinoza*, 830 F. App'x. 324 (D.C. Cir. 2020) (unpublished) (35 years after a substantial assistance departure, for ambushing and killing HSI agent); *United States v. Navarro-Montes*, 521 F. App'x. 611 (9th Cir. 2013) (unpublished) (life after ran over Border Patrol agent with vehicle); *United States v. Kahl*, 95 F. App'x. 200 (8th Cir. 2004) (unpublished) (life for being part of shootout that killed two Marshals); *United States v. Velarde-Lopez*, 54 F. App'x. 265 (9th Cir. 2002) (unpublished) (life for shooting Border Patrol agent who tried to arrest him); *United States v. Molina-Uribe*, 853 F.2d 1193 (5th Cir. 1988) (life for killing DEA agent who tried to arrest him), overruled on other grounds, *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991); *United States v. Guyon*, 717 F.2d 1536 (6th Cir. 1983) (life for shooting FBI agent who tried to arrest him); and the 40-, 55-, and 56-year sentences imposed after guilty pleas to robbing and killing a Border Patrol agent. See U.S. Dept. of Justice, Fourth Defendant Sentenced In Murder Of U.S. Border Patrol Agent Robert Rosas, Mar. 20, 2014, available at bit.ly/3PNcHLD (last visited August 26, 2022).

The sentences for Favela's co-conspirators are also guideposts but less important. The statute's goal is national uniformity, not uniformity among co-defendants in the same case. *United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007). Still, of the five from the robbery crew in the wash, 50 years of imprisonment fits between the life sentences for Heraclio Osorio-Arellanes, Ivan Soto-Barraza, and Jesus Lionel Sanchez-Meza (who each denied guilt through trial and have never shown contrition for Terry's murder); and the 30 years for Manuel Osorio-Arellanes (who also pleaded guilty and admitted responsibility but, unlike Favela, had not served a notable prison sentence before, did not evade capture for years, and cooperated and helped the investigation in its earliest stages). Fifty years means Favela would spend much of his remaining life in prison—absent special relief, the earliest

he could get out is age 79 or 510 months from his October 2017 arrest—which is just and deserved for the crime.

DATED: September 12, 2022

Respectfully submitted,

RANDY S. GROSSMAN
United States Attorney
Southern District of California

/s/ Peter Ko

PETER KO
Special Attorney