**The Carrillo Law Firm, PLLC**
F. Michael Carrillo, SB#024343
23 North Stewart Avenue
Tucson, Arizona 85716
Phone: (520) 820-2829
Email: thecarrillolawfirm@gmail.com

*Attorney for Jesus Rosario Favela-Astorga*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>  v.<br><br>Jesus Rosario Favela-Astorga,<br><br>  Defendant. | NO: CR-11-00150-TUC-DCB-BGM-2<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

The defendant, Jesus Rosario Favela-Astorga, through counsel, respectfully presents to the Honorable Court the following Sentencing Memorandum. Based on the factors set forth in this memorandum and those contained in 18 U.S.C. § 3553(a), the defense respectfully requests that the Court grant Mr. Favela-Astorga's request for a variance and impose a sentence no greater than thirty-five years, 420 months, in prison.

Respectfully submitted this 14th day of September, 2022.

                              The Carrillo Law Firm, PLLC.
                              F. Michael Carrillo

                              **/s/ F. Michael Carrillo**
                              F. Michael Carrillo
                              Attorney for Jesus Rosario Favela-Astorga

1

**Sentencing Factors contained in USC § 3553(a)**

In *United States v. Booker*, 125 S. Ct. 738 (2005), the Supreme Court found mandatory enforcement of the United States sentencing guidelines to be unconstitutional however the Court preserved the guideline sentencing scheme by severing those provisions of the Sentencing Reform Act that made the guidelines mandatory. Consequently, the guidelines are now "effectively advisory." *Booker,* 125 S.Ct. at 757; *United States v. Ameline* [*Ameline III*], 409 F.3d 1073, 1077 (9th Cir. 2005). As modified, sentencing courts are to consider guidelines ranges but are permitted to tailor sentences in light of other statutory concerns. See 18 U.S.C. § 3553(a); *Booker*, 125 S.Ct. at 757-69. In other words, sentencing courts, "while not bound to apply the guidelines, must consult those guidelines and take them into account when sentencing." *Booker*, 125 S.Ct. at 767 (citation omitted).

Under *Booker's* remedial scheme, courts should follow the same procedures already employed under the guidelines, first resolving all disputes about the application of the guidelines in compliance with Fed. R. Crim. P. 32(I) and then determine the advisory guideline range.

Under 18 U.S.C. § 3553(a), the court must arrive at and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth" here:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed–

   a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  b. to afford adequate deterrence to criminal conduct;

  c. to protect the public from further crimes of the defendant; and

  d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range …

(5) any pertinent policy statement …

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

***Factors contained in USC § 3553(a) support Mr. Favela-Astorga's request for a sentence no greater than thirty-five years.***

***History and Characteristics***

  Jesus Rosario Favela-Astorga was born in a rural farming and ranching community named Estacion Hoyancos, in Sinaloa, Mexico. He estimates that when he was growing up, there were only about a hundred other houses in the small town where he and his family lived.

  His mother worked very hard to provide a stable home for her family. She religiously cooked, cleaned and carried water from a nearby well to her home several times a day in order to provide clean drinking, bathing, cooking, and cleaning water. Their home was very simple and was constructed of mud adobe. Their kitchen and bathroom were

located outdoors and to help support the family, she made ice creams and candies that Jesus sold for a peso each at the nearby train station.

Jesus' father was a strict man who worked very hard to provide for his family. He worked nearly his entire life on the rail roads, fixing and maintaining the carts, in-and-around the larger cities of El Fuerte, and Los Mochis, and around all of the smaller towns near Estacion Hoyancos that fill the state of Sinaloa, Mexico.

At times, Jesus' father's discipline translated into physical beatings with broomsticks, water-hoses, belts and other objects, often leaving Jesus with scars on his head and arms and legs. Nevertheless, Jesus enjoyed a close relationship with his father and had a profound respect for both of his parents.

Jesus reports that he was extremely poor growing up. He only obtained six years of formal education because his parents could not afford the basic supplies to allow Jesus to continue with his education. Items like pens, paper, backpacks, clean clothes, and decent shoes were simply unobtainable. Therefore, Jesus began working at a very young age. Jesus helped support his family by working in the fields as young as ten or eleven. The fields near his home are abundant with various types of crops including tomatoes, corn, bean, squash, asparagus, and all types of citrus and mangos. His family would send Jesus from one town to the next during harvest season to work in the fields cutting and picking crops. It was backbreaking labor, but Jesus understood his obligation to help his parents with putting food on the table.

As he grew older, in his late-teenage years, when he was seventeen, eighteen years old, he moved to Los Cabos, in Baja California, and worked in construction for a couple

4

of years. He moved back to Estacion Hoyancos and again worked in the fields and was a runner for dove and quail hunters. In his early twenties, Jesus immigrated to the United States and lived in Phoenix, Arizona, where he also worked in construction. He never planned to remain in the United States, rather, his intention was to always work and send money home to support his family.

*Remorse*

Jesus Rosario Favela-Astorga stands before the Court seeking a sentence of 35-years in prison for his participation in an event that deeply and sincerely saddens him. Jesus did not intend to harm anyone. He did not shoot his weapon. He did not intend to bring harm to Agent Terry or any other agent. Rather, immediately after hearing gun shots, Jesus dropped his weapon. He started to run and did not stop until he heard helicopters in the air, which was likely hours after the shooting.

Jesus remains sincerely remorseful as he realizes that had he not been in the desert in December of 2011, there is a possibility that Agent Terry would still be alive.

*Acceptance of Responsibility*

Jesus Rosario Favela-Astorga hopes that his acceptance of responsibility will bring a sense of closure, peace and healing to the victims and their family members. Mr. Favela-Astorga resolved the case almost immediately after the government extended a plea offer.

The government extended the first and only plea offer on March 28, 2022, making a slight revision on April 8, 2022. Mr. Favela-Astorga accepted the offer and immediately notified counsel for the government on April 10, 2022.

Within forty-eight hours after being presented with the thirty-five-to-fifty-year plea offer, Jesus Rosario Favela Astorga accepted responsibility and hopefully closed a painful chapter for the lives of the family members of Brian Terry and the other agents involved in this case.

***Similarly Situated Co-Defendants***

Three of the co-defendants, Heraclio Osorio-Arellanes, Jesus Meza-Sanchez, and Ivan Soto-Barraza all went to trial, and all received life sentences.

Manuel Osorio-Arellanes plead guilty to first degree murder. He was arrested immediately after the incident as he was shot and seriously injured. Manuel Osorio-Arellanes, with the government's recommendation, received a sentence of thirty years in prison.

Rosario Rafael Burboa-Alvarez, the organizer, the recruiter and the person who arranged to have the guns waiting in the desert, also plead guilty to First Degree Murder and received a sentence of thirty years in prison.

A sentence of thirty-five years in prison will justly hold Mr. Favela-Astorga responsible for his role in this offense and is consistent with the sentences given to the co-defendants.

***Deterrence and Rehabilitation***

Jesus Rosario Favela-Astorga is respectfully requesting that this Honorable Court impose a sentence of thirty-five years in prison for his conduct in this case. He will be a man well into his seventies if he is released from prison.

As the United States Sentencing Commission[1] reports, that the older a person is, the less likely that are to commit another crime.

When he is released from prison, he plans to reunite with his family in Sinaloa, Mexico. Jesus is the father of five children ages twenty to seven years old. He has grandchildren, and will likely have more, that he has never met. He has not seen his family since 2017, and he realizes that he will not see them for many years to come. With the Court's mercy, he is asking for a sentence of thirty-five years which will give him the opportunity and possibility of reunifying with his family.

**Conclusion**

Based on the components set forth in this Sentencing Memorandum and the factors contained in USC § 3553(a), Jesus Rosario Favela-Astora respectfully requests that this Honorable Court impose a sentence no greater than thirty-five years, or 420 months in prison.

RESPECTFULLY SUBMITTED this 14th day of September, 2022.

THE CARRILLO LAW FIRM, PLLC
F. MICHAEL CARRILLO
*s/ F. Michael Carrillo*
F. Michael Carrillo
*Attorney for Jesus Rosario Favela-Astorga*

Copy provided by ECF to:

Peter Ko, Special Assistant US Attorney
United States Attorneys' Office

---

[1] The United States Sentencing Commission (December 2017), *The Effects of Aging on Recidivism Among Federal Offenders.* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.