**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Rosario Favela-Astorga,<br><br>Petitioner,<br><br>v.<br><br>United States of America,<br><br>Respondent. | No. CV-24-00140-TUC-JGZ[1]<br>No. CR-11-00150-TUC-JGZ<br><br>**ORDER** |

Pending before this Court is Petitioner's "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Petition) pursuant to 28 U.S.C. § 2255. Petitioner alleges that his trial counsel was ineffective in negotiating his plea agreement and at sentencing. Petitioner asserts his attorney failed to negotiate a meaningful deal. He argues that his 50-year prison sentence is not much different from life in prison, and he should have received a 15-year sentence. He also asserts that his attorney told him he would get a 30- or 35-year sentence under the Plea Agreement, not 50 years.

A.  Conviction and Sentence

Petitioner pleaded guilty to second-degree murder in violation of 18 U.S.C. § 1111 and 18 U.S.C. § 1114, as charged in Count 2 of the Fifth Superseding Indictment. The Plea Agreement provided Petitioner will recommend a sentence of 420 months' imprisonment and the Government will recommend a sentence of 600 months' (35 to 50 years') imprisonment, but the Agreement gave the Court complete discretion to impose a sentence

---

[1] On September 10, 2024, the Clerk of the Court reassigned CR 11-150 TUC DCB and CV 24-140 TUC DCB to this Court.

of up to life imprisonment. (Plea Agreement (CR 11-150 TUC JGZ, Doc. 966) at 2.) On September 21, 2024, the Court sentenced Petitioner to 600 months (50 years) in prison, with credit for time served, followed by supervised release for a term of five years. The Plea Agreement also included a waiver of appellate rights and collateral review. (*Id.* at 3.)

B.     28 U.S.C. § 2255

Title 28 of the United States Code, Section 2255 provides for collateral review of Petitioner's sentence as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. A motion for such relief may be made at any time.

28 U.S.C. § 2255.

The Ninth Circuit Court of Appeals has found that there are strict standards for waiver of constitutional rights. *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1102 (9th Cir. 2005). It is impermissible to presume waiver from a silent record, and the Court must indulge every reasonable presumption against waiver of fundamental constitutional rights. *Id.* As explained below, Petitioner's waiver was clear, express, and unequivocal. Additionally, the Court considers and rejects the merits of his alleged constitutional violations.

1.     Waiver

Plea agreements are contractual in nature and their plain language will generally be enforced if the agreement is clear and unambiguous on its face. *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005). Therefore, an express waiver of appellate rights is enforceable if the language of the waiver encompasses the right to appeal on the grounds raised, and the waiver is knowingly and voluntarily made. *Id.*

A defendant may waive the statutory right to bring a habeas action under 28 U.S.C. § 2255 challenging the length of his sentence. *United States v. Pruitt*, 32 F.3d 431, 433 (9th

Cir. 1994); *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1992) (citing *Abney v. United States*, 431 U.S. 651, 656 (1977) ("The right of appeal, as we presently know it in criminal cases, is purely a creature of statute....")). The only claims that cannot be waived are claims that the plea or waiver itself was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary. *See Washington v. Lampert*, 422 F.3d 864, 871 (9th Cir. 2005) (holding that a plea agreement that waives the right to file a federal habeas petition pursuant to § 2254 is unenforceable with respect to an ineffective assistance of counsel claim that challenges the voluntariness of the waiver); *Pruitt*, 32 F.3d at 433 (expressing doubt that a plea agreement could waive a claim that counsel erroneously induced a defendant to plead guilty or accept a particular part of the plea bargain); *Abarca*, 985 F.2d at 1014 (expressly declining to hold that a waiver forecloses a claim of ineffective assistance or involuntariness of the waiver); *see also Jeronimo*, 398 F.3d at 1156 n.4 (summarizing *Pruitt* and *Abarca*, declining to decide whether waiver of all statutory rights included claims implicating the voluntariness of the waiver). In short, if a collateral attack waiver is made knowingly and voluntarily, it must be enforced. *United States v. Rodriguez*, 49 F.4th 1205, 1211–12 (9th Cir. 2022).

Upon review of the record in this case, it appears that in addition to the clear and unambiguous terms of the written waiver in the Plea Agreement, both the Magistrate Judge, at the time of Petitioner's plea, and the sentencing Court, at the time of sentencing, explained to and confirmed with the Petitioner the waiver of appellate rights. (Change of Plea Hearing (COP) Transcript of Record (TR) (CR 11-150 TUC JGZ, Doc. 999) at 6, 10–11 (asking and obtaining verbal confirmation from Petitioner that counsel had explained Plea Agreement in Spanish before Petitioner signed it; confirming he understood and had no questions regarding waiver of right to collaterally attack the plea, except he retained the right to compassionate release and to claim ineffective assistance of counsel)); (Sentencing TR (Doc. 1000) at 3, 7 (counsel confirming he discussed the Presentence Report with Petitioner, and Petitioner confirming he understood the Plea Agreement included waiver

of appellate rights)).

Petitioner does not dispute that the waiver of his appellate rights was voluntary or knowing. The record confirms Petitioner waived his appellate rights except his right to assert ineffective assistance of counsel. As to that claim, the Petitioner presents three arguments: 1) counsel failed to discuss the Presentence Report with him before sentencing; 2) the Court should have imposed a 15-year sentence, not 50 years, and counsel told him he would be sentenced to a 30- or 35-year term in prison, and 3) at sentencing, counsel failed to object to alleged sentencing errors. (Motion to Set Aside (Motion) (Doc. 1) at 3–6.) As explained below, these claims fail on the merits.

### 2. Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court enunciated the standards for judging a criminal defendant's contention that his conviction should be set aside because counsel's assistance was ineffective. To prevail on a claim of ineffective assistance, the Petitioner must show both that his counsel's performance was deficient and that this deficiency prejudiced his case. *Id.* at 688. First, the defendant must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id.* at 687–88. To this end, the defendant must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *Id.* at 690. The court must then determine whether, considering all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 688–90. Second, the defendant must affirmatively prove prejudice. *Id*. at 691–92. He must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Petitioner's first claim for habeas relief is resolved on the record which reflects that counsel did discuss and review the Presentence Report with him. Counsel reported to the

Court at sentencing, in Petitioner's presence, that he had discussed the report with Petitioner. (Sentencing TR (CR 11-150 TUC JGZ, Doc. 1000) at 3.) Petitioner did not say otherwise. *Id.*; *see also* Allocution at 10–11. Petitioner must prove his claims by a preponderance. *See Alcala v. Woodford*, 334 F.3d 862, 869 (9th Cir. 2003); *see also Holland v. Jackson*, 542 U.S. 649, 654 (2004) (per curiam). Petitioner's self-serving assertion, which is contrary to the record, is insufficient given the strong presumption under *Strickland* that counsel's representation was competent under 'prevailing professional norms.'" *Harrington v. Richter*, 562 U.S. 86, 104–05 (2011).

Second, Petitioner submits the "deal" counsel secured reflects ineffective assistance of counsel because the maximum sentence for "involuntary manslaughter" or "second degree involuntary murder" is a 15-year term in prison. Petitioner did not plead to the charge of involuntary manslaughter.[2] To be clear, Petitioner agreed to, and did, plead to second-degree murder.[3] The Government agreed to, and did, dismiss the first-degree murder charge which carries a maximum sentence of life. Petitioner's codefendants, who did not enter plea agreements, were charged and convicted of first-degree murder and sentenced to life. *See* CR 11-150 TUC JGZ (imposing life sentences for first-degree murder for codefendants Ivan Soto-Barraza, Heraclio Osorio-Arellanes, and Jesus Lionel Meza-

---

[2] "Manslaughter is the unlawful killing of a human being without malice. It is of two kinds: Voluntary--Upon a sudden quarrel or heat of passion; Involuntary--In the commission of an unlawful act *not amounting to a felony*, or in the commission in an unlawful manner, or without due caution and circumspection, of a lawful act which might produce death." 18 U.S.C.A. § 1112 (West) (emphasis added).

"Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated . . . from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree. Any other murder is murder in the second degree." 18 U.S.C.A. § 1111 (West).

[3] "In general.--Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished--(1) in the case of murder, as provided under section 1111; (2) in the case of manslaughter, as provided under section 1112; or (3) in the case of attempted murder or manslaughter, as provided in section 1113." 18 U.S.C.A. § 1114 (West).

Portillo). The Court sentenced Petitioner in accordance with the Plea Agreement to 50 years in prison. Petitioner will be potentially eligible for release at age 79 or 80 with good behavior credit. Comparing the life sentences of his codefendants for first-degree murder, the Court finds Petitioner benefited from the 50-year sentence for second-degree murder under the Plea Agreement negotiated by counsel.

Petitioner claims that counsel "pledged a maximum sentence of 30 to 35 years" in custody, which was the low end of the sentencing range in the Plea Agreement. The record is to the contrary. The Plea Agreement reflected that Petitioner would "recommend" a sentence of not less than 420 months (35 years), and the prosecution would "recommend" up to 600 months (50 years). The Plea Agreement did not bind the Court which had "complete discretion to impose a sentence of up to life imprisonment." (Plea Agreement (Doc. 966) at 2.) At the COP hearing, the Court told Petitioner the same, and he responded that he understood. (COP TR (Doc. 999) at 8–9.) The Court asked Petitioner, and he answered under oath, that no one had "promised [him] anything" for his plea other than what was contained in the written Plea Agreement. (*Id.* at 7.)

The Court finds Petitioner's assertion that his attorney told him he faced a 15-year sentence not credible in the face of the clear terms of the Plea Agreement. The Plea Agreement, which was, in relevant part, reviewed with Petitioner at the COP hearing, clearly states that he faced a possible sentence of 35 to 50 years or more. Petitioner's assertion that his counsel told him that the sentence under the Plea Agreement would be 35 years lacks merit.

Lastly, Petitioner argues that counsel was ineffective because he failed to "secure a Rule 11(c)(1)(C) cap-plea," which would have allowed Petitioner to withdraw his plea if the Court refused to sentence Petitioner as reflected in the Plea Agreement. Fed. R. Crim. P. 11(c)(1)(C), (c)(3)(A). Petitioner's argument is flawed. First, the prosecution did not offer, nor have an interest in, a Rule 11(c)(1)(C) plea; counsel could not secure one unilaterally. (Gov't Response to Motion (Resp.) (Doc. 4) at 5.) Second, Favela has not

shown the result of the proceeding probably would have changed if counsel had secured a Rule 11(c)(1)(C) plea. As discussed above, the Plea Agreement contained a recommended sentencing range, and the Court sentenced the Petitioner within that range. Rule 11(c)(1)(C) language in the Plea Agreement that bound the Court to the sentencing range would not have provided any additional benefit to the Petitioner. It was not ineffective assistance of counsel to not push for a "cap-plea."

Petitioner's third claim for habeas relief depends on him showing that the Court committed sentencing errors because counsel was ineffective in failing to object at sentencing. Petitioner argues counsel: (1) failed to "object to the use of 'acquitted conduct' in his sentence"; (2) "did not object to the court departing upward based on dismissed or acquitted conduct"; and (3) "did not object to 'uncharged . . . conduct forming the basis of the court's reasons for his sentence under 18 U.S.C. 3553(a).'" (Resp. (Doc. 4) at 5–7 (citing Motion (Doc. 1) at 6).)

The first two arguments are easily rejected. There was no acquitted conduct in this case and Petitioner fails to identify any "acquitted conduct" considered by the sentencing court. Petitioner pleaded guilty, with some counts being dismissed without prejudice pursuant to the Plea Agreement. (Plea Agreement (Doc. 966) at 2.) Even if there had been "acquitted conduct," a sentencing court may consider acquitted conduct if proved by a preponderance. *United States v. Watts*, 519 U.S. 148, 157 (1997). Likewise, the sentencing court did not depart upward based on dismissed conduct; Petitioner's 50-year sentence was within the Sentencing Guideline advisory range of 360 months to life for the second-degree murder charge that Petitioner pleaded guilty to. (Sentencing TR (Doc. 1000) at 6); (Presentence Report (PSR) (SEALED) (Doc. 975) at 9, 13 (reflecting base offense level 38 for second-degree murder, plus 6 for assaulting law enforcement officer, minus 2 for acceptance of responsibility, for total offense level 42, criminal history category II with "guideline imprisonment range [of] 360 months to life."))

Finally, the Court notes that the sentence was not based on any uncharged conduct.

Petitioner's "responsibility for murder rested on it being a foreseeable consequence and within the scope of the marijuana robbery conspiracy, *see Pinkerton v. United States*, 328 U.S. 640 (1946), so his admissions included facts establishing the conspiracy." (Resp. (Doc. 4) at 6.) The Plea Agreement's factual basis was as follows:

1. [Petitioner] entered into an agreement with others to steal loads of marijuana from individuals . . . . In order to accomplish this, members of the conspiracy would . . . (3) use [] firearms to intimidate marijuana smugglers into giving up their loads of marijuana.

2. Around December 10, 2010, [Petitioner and others] entered the United States without obtaining the consent of United States authorities. The purpose of that illegal entry into the United States was to rob marijuana loads from smugglers.

3. [The conspirators] retrieved firearms and food supplies that had been hidden in the area by others. Each of the five conspirators carried a firearm. [Petitioner] carried a loaded AK-47-type assault rifle.

4. [T]hey began looking for drug smugglers to rob. On December 14, 2010, while they were looking for drug smugglers to rob, the conspirators encountered Border Patrol agents. Members of the conspirators' group exchanged fire with the agents. One of the shots fired by a conspirator killed Border Patrol Agent Brian Terry.

(Plea Agreement (Doc. 966) ¶¶ 1, 2, 4, 5 at 7–8.) The Court explained the sentence as follows: "[Y]ou came into this country unlawfully, you entered illegally, that you obtained a firearm, which was loaded, with the intent therefor to use that firearm, not necessarily against a law enforcement officer, but to use it in some manner or to fire it – otherwise, it would not be loaded; you wouldn't have it in the first place – and at the very least, intend to rob people at gunpoint. As a result of all this illegal activity, a law enforcement [officer] of the United States government was killed. To reflect the seriousness of that offense, I'm going to commit you for a term of 600 months, or 50 years, in prison." (*Id.*); (Sentencing TR (Doc. 1000) at 18–29.) The Court did not reach beyond the admitted facts of the offense.

//

C.     Conclusion: No Prejudice

Habeas relief under § 2255 is reserved for "exceptional circumstances," *Hill v. United States*, 368 U.S. 424, 428 (1962), where there is prejudicial error of constitutional significance. 28 U.S.C. § 2255(a). The Court rejects Petitioner's argument that his counsel was ineffective in negotiating the Plea Agreement or at sentencing. The Court finds no constitutional violation of the Sixth Amendment right to effective assistance of counsel under *Strickland*.

The Court finds that Petitioner failed to prove his allegations of ineffective assistance of counsel by a preponderance of the evidence. *See Alcala*, 334 F.3d at 869; *see Holland*, 542 U.S. at 654. Instead, the record is to the contrary. "'[O]rdinarily' collateral attacks that 'directly contradict the petitioner's statements' in a plea colloquy 'must fail,' as the latter 'carry a strong presumption of truth.'" (Resp. (Doc. 4) at 4 (quoting *Muth v. Fondren*, 676 F.3d 815, 821–22 (9th Cir. 2012)).) Put another way, absent extraordinary circumstances, "'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.'" *Muth*, 676 F.3d at 822 (cleaned up and quoting *United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir. 2005)). Based on the record in this case, the evidence posited by Petitioner to support his Motion falls squarely within the standard of palpably incredible and patently frivolous or false. There is simply no evidence to support a claim of error so serious that counsel's representation, strongly presumed reasonable under *Strickland*, was objectively unreasonable to the point that it "amounted to incompetence under 'prevailing professional norms.'" *Harrington*, 562 U.S. at 104–05.

The Court rejects the notion that the Plea Agreement prejudiced the Petitioner when, in accordance with the Plea Agreement, the first-degree murder charge was dismissed and the Court sentenced Petitioner within the recommended range to 50 years in prison, instead of the life term he would have faced if convicted of first-degree murder. The case against Petitioner was strong. A federal agent was murdered, Petitioner's DNA was found on a

toothbrush in a backpack left at the scene of the shooting, and he admitted he was at the shootout. As the sentencing court explained when it rejected objections based on arguments that Petitioner did not know the shoot-out was with law enforcement officers:

> I presided over two trials, heard all the evidence in both. I have read a presentence report that pertains to each and every defendant in this case, so I'm very familiar with the facts. And I do not find any factual basis for Mr. Favela's objections to the presentence report. It was clear to me in the evidence that there was an announcement made by law enforcement officials that that's who they were, and that was prior to any gunfire. So I'm going to overrule that objection.

(Sentencing TR (Doc. 1000) at 5.) The sentencing court imposed life sentences on other defendants, who went to trial and were convicted of first-degree murder.

*Strickland* requires Petitioner to prove prejudice, i.e., a reasonable probability that, without the error, his sentence would have been different. *Strickland*, 466 U.S. at 694. Petitioner's assertions of prejudice are in large part summarily made. Petitioner has not explained how his review of the PSR probably would have changed his sentence. His allegations related to counsel's advisement of the probable length of imprisonment under the Plea Agreement fails because Petitioner was advised of this information at the plea hearing and sentencing. *Cf. Womack v. Del Papa*, 497 F.3d 998, 1003–04 (9th Cir. 2007) (finding no showing of prejudice due to ineffective assistance of counsel when the court's plea canvass alerted defendant to the potential consequences of his guilty plea). The Court finds the Plea Agreement benefited Petitioner by reducing his exposure to a life sentence. There was no prejudice to Petitioner from the negotiated plea. This is true, even if Petitioner will be 79 or 80 years old when he completes the 50-year sentence. Based on this benefit, Petitioner cannot show "a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In conclusion, Petitioner fails to state a claim for ineffective assistance of counsel because he fails to allege facts sufficient to meet either the performance or prejudice

standard, and this Court will summarily dismiss his claim without a hearing. *Strickland*, 466 U.S. at 693.

**Accordingly,**

**IT IS ORDERED** that the Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, pursuant to 28 U.S.C. § 2255 (Doc. 1003) filed in CR 11-540 TUC JGZ and (Doc. 1) filed in CV 24-140-TUC-JGZ is **denied**.

**IT IS FURTHER ORDERED** that in the event Petitioner seeks to file an appeal, a certificate of appealability is **denied** because Petitioner has not shown that "jurists of reason would find it debatable whether the Motion to Set Aside, 28 U.S.C. § 2255, states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also* 28 U.S.C. § 2253(c)(2); *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012); *United States v. Winkles*, 795 F.3d 1134, 1143 (9th Cir. 2015).

Dated this 4th day of October, 2024.

Jennifer G. Zipps
United States District Judge